E-FILED
Monday, 28 November, 2022  11:29:05 AM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

KIMBERLY R.A.,
     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
     Defendant.

Case No. 4:21-cv-04153-SLD-JEH

**Report and Recommendation**

     Now before the Court is the Plaintiff's Affidavit, construed as her Motion for Summary Judgment (Doc. 10), and the Defendant's Motion for Summary Affirmance (Doc. 13).    This matter has been referred for a report and recommendation.  The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

     Kimberly R.A. filed an application for supplemental security income (SSI) on March 5, 2019, alleging disability beginning on January 1, 2018.  Her SSI claim was denied initially on June 7, 2019 and upon reconsideration on September 12, 2019.  Kimberly filed a request for hearing concerning her application which was held on August 17, 2020 before the Honorable David W. Thompson (ALJ).  At that hearing, Kimberly, who was not represented by an attorney, testified as did a vocational expert (VE).  The ALJ issued an unfavorable decision, and the Appeals

---

[1] References to the pages within the Administrative Record will be identified by AR [page number].  The Administrative Record appears at (Doc. 7) on the docket.

Council thereafter remanded the case.  On March 10, 2021, a second hearing was held before the same ALJ, Kimberly was again not represented by an attorney at that hearing, Kimberly again testified, a different VE testified, and Kimberly's mother testified.  Following the second hearing, Kimberly's SSI claim was denied on March 17, 2021.  Her request for review by the Appeals Council was denied on July 27, 2021, making the ALJ's March 2021 Decision the final decision of the Commissioner.  Kimberly timely filed the instant civil action seeking review of the ALJ's March 2021 Decision on September 14, 2021.

## II

Kimberly argues the VEs at both hearings said Kimberly could not do the identified jobs due to her limitations, but both of the ALJs' decisions stated the opposite – that Kimberly could do the identified representative, unskilled jobs. Kimberly also argues there is a conflict of interest in this case, the ALJ's behavior towards her was biased, and the coronavirus was not taken into consideration and should have been "automatically."  (Doc. 10 at pg. 2).

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision."  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1)    is performing substantial gainful activity;

2)    suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)    suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)    is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

> 5)    is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Kimberly claims error on the ALJ's part at Step Five.

### A

Kimberly first argues that the VEs did not say what the ALJ wrote in his March 2021 Decision – that Kimberly was capable of performing the jobs the VEs listed – and the court transcript does not say where they had said yes or no to the question of whether she could perform the jobs. The Commissioner argues that substantial evidence supported the ALJ's reliance on the VE's testimony from the March 2021 hearing.

At that hearing, the following colloquy occurred between the ALJ and VE Dennis Gustafson:

> Q:    So, Mr. Gustafson, I'd like you to assume we have an individual the same age, education, and experience as the Claimant. This individual is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multi-step self-evident tasks easily resumed after momentary distraction. And limited to jobs that do not require more than occasional work-related interaction with the public, coworkers, and supervisors . . . Are there jobs in the economy such an individual could perform? And in this, I'd like you to give me

> two medium jobs, two light jobs, and two sedentary jobs, please.
>
> A:  Okay. The examples I cite will be approximate national figures, they will be . . . unskilled, SVP: 2, with the GED reasoning level not exceeding 2. Jobs at the medium level . . . Hand packager . . . Another medium example would be a sweeper cleaner industrial . . . Light examples, housekeeping, cleaner . . . And marker . . . Sedentary examples, tube operator . . . Addresser[.]

AR 49-50. The number of positions for each of those jobs varied from 4,000 to 425,000 positions nationally. The colloquy continued:

> Q:  Okay. I'm now going to modify the hypothetical. I'm going to change the social interaction. So, now it will be that the individual is limited to jobs that do not require any work-related interaction with the public and no more than occasional work-related interaction with coworkers and supervisors. How would these restrictions affect the jobs you've just cited?
>
> A:   The only job affected by that would be the housekeeping, cleaner, and I would remove about three fourths of the jobs leaving about 100,000 that would have no public contact.
>
> Q:  And I'd like you to assume we have an individual who is going to miss four or more days of work per month, how would that affect employability?
>
> A:  That would rule out employment on the basis of inadequate productivity.
>
> Q:  Now I'd like you to assume we have an individual who for whatever reason, maybe they need extra rest breaks or extra restroom breaks, the bottom line is that they will be less than 80 percent productive while on the job. How is that going to affect employability?
>
> A:  That also would rule out employment on the basis of inadequate productivity.

AR 50-52.

The residual functional capacity (RFC) finding the ALJ ultimately made in his March 2021 Decision did *not include* any reference to excessive absenteeism or

5

any allowance for extra rest breaks, but it *did include* the other limitations he posed

to VE Gustafson:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction. She is limited to jobs that do not require more than occasional work-related interaction with the public, co-workers and supervisors.

AR 16. A claimant's RFC is "the most [the claimant] can do despite [her] limitations" and is "based on all of the evidence in [the claimant's] case record." 20 C.F.R. § 416.945(a)(1).

The ALJ's Decision in general and RFC finding in particular are supported by substantial evidence. At Step One, the ALJ determined Kimberly had not engaged in substantial gainful activity since March 5, 2019, the application date. AR 14. At Step Two, the ALJ determined Kimberly had the following severe impairments: depressive/bipolar related disorders and anxiety/obsessive-compulsive disorders. *Id.* In support of that finding, the ALJ recited the details of Kimberly's April 2019 comprehensive psychological consultative examination at the conclusion of which the licensed clinical psychologist diagnosed major depressive disorder, recurrent, mild severity and unspecified anxiety disorder with panic attacks. AR 411. In rejecting gout and chronic kidney disease as severe impairments, the ALJ referred to Kimberly's longitudinal treatment record, physical examination of Kimberly's bilateral upper and lower extremities which revealed 5/5 motor strength bilaterally, and the fact that Kimberly said her right kidney was functioning at 80% and she was diagnosed with stage I renal failure in 2014. The ALJ found the medical evidence established that Kimberly's gout and chronic kidney disease caused only slight abnormality or a combination of slight

abnormalities that would have no more than a minimal effect on her ability to work. *See* 20 C.F.R. § 416.922(a) (defining a non-severe impairment to be "[a]n impairment or combination of impairments" that does not significantly limit your physical or mental ability to do basic work activities").

At Step Three, the ALJ determined Kimberly did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 15. The ALJ found only mild limitation in one broad area of functioning and moderate limitation in the remaining three broad areas of functioning set forth in "paragraph B" of Listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders). AR 15. In support of those findings, the ALJ cited: Kimberly's completion of four-plus years of college; the fact she had a valid driver's license and drove; the fact that she said spent time with others, got along "good" with authority figures, followed written instructions "fairly good" and spoken instructions "good;" and the fact that she walked her dog, prepared meals daily, did laundry once a week, and could manage her own personal finances. AR 15-16. The ALJ also considered the consistency and inconsistency of the State Agency psychological consultants' "paragraph B" ratings (two mild and two moderate) with the medical evidence, and the ALJ ultimately found the record did not support marked or extreme limitations.

At Step Four, in support of his RFC finding, the ALJ considered Kimberly's subjective statements that her pain medications were ineffective in managing/controlling her gout pain, she did not consistently care for her own basic needs and was frequently depressed, she had difficulty with memory and concentration, she had difficulty with social interaction which caused her to self-isolate, and she stopped working in October 2016 because of her medical conditions. The ALJ contrasted those statements with other evidence of record.

The consultative psychological examining doctor observed Kimberly's hygiene and grooming were adequate, she was cooperative and had an effective rapport with the evaluator, and her speech was clear. She followed instructions appropriately. The ALJ observed Kimberly's recent and remote memories appeared adequate where she recalled up to and including four numbers forward and three numbers backward. The ALJ also observed her attention and concentration were adequate on topics as evidenced by no need for redirection and little to no difficulty on the spelling, memory, or math tasks during the examination. During the April 2019 consultative internal medicine consultative examination, Kimberly was able to fully extend her hands, make fists, oppose the fingers, and grasp and manipulate objects normally. She had 5/5 grip strength bilaterally, 5/5 lower extremity strength bilaterally, and unlimited range of motion throughout her body.

During a referral appointment in November 2019 for her chronic kidney disease, Kimberly complained of symptoms but denied recent hospitalization and stated she was not limited in any of her activities. While she admitted to a history of left renal agenesis and reported urinary frequency, she denied fatigue, decreased energy, and history of urinary tract infections or kidney stones. The doctor diagnosed her with stage I chronic kidney disease and normal renal function. In January 2020, upon follow up for her kidney disease, Kimberly was similarly diagnosed with stage I chronic kidney disease secondary to reduced renal mass from left renal agenesis. Her renal function was "relatively stable." AR 476. When Kimberly presented to Transitions Mental Health Services for medication monitoring in July 2020, she reported she was doing a lot better, and her sleep, energy, and appetite were good. Upon mental status examination, she was goal-directed and had good insight and judgment.

Highlighting Kimberly's normal examination findings and presentation at and performance of tasks at her consultative psychological examination, the ALJ articulated that support for the frequency, intensity, and persistence of Kimberly's alleged symptoms was lacking in the record.  The ALJ also pointed out that the State Agency findings were that Kimberly did not have a condition that met or equaled a Listing and that she was not disabled.  As for the State Agency doctors' assessments of Kimberly's mental impairments, the ALJ explained they were reasonably consistent with the medical evidence and Kimberly's longitudinal treatment record but were modified somewhat to afford Kimberly the benefit of the doubt.  Lastly, the ALJ explained he could not afford significant probative value to Kimberly's mother's opinions as they were not fully consistent with the objective medical evidence as a whole as discussed throughout the Decision as to Kimberly's own statements.

The foregoing illustrates the ALJ sufficiently considered the record evidence as a whole; there are no glaring omissions insofar as evidence unaddressed or even evidence unconsidered is concerned.  *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning").  The ALJ moreover pointed to substantial evidence in support of his conclusion that Kimberly could perform a full range of work at all exertional levels but with certain non-exertional limitations.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting that the phrase "substantial evidence" used throughout administrative law presents a threshold for evidentiary sufficiency that is "not high").

At Step Five, the ALJ explained that he questioned VE Gustafson at the hearing to determine the extent to which Kimberly's non-exertional limitations eroded the occupational base of unskilled work at all exertional levels.  AR 21.  The

ALJ ultimately concluded at Step Five of the disability analysis that based upon VE Gustafson's testimony, considering Kimberly's age, education, work experience, and RFC, Kimberly was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. *Id*. The ALJ thus concluded Kimberly had not been under a disability since March 5, 2019. *Id*. As a result of the fact that the ALJ's RFC finding and Decision as a whole were supported by substantial evidence, the ALJ made no error in relying upon VE Gustafson's testimony for purposes of the Step Five finding. *See Milhelm v. Kijakazi*, 52 F.4th 688, 696 (7th Cir. 2022) (finding a reasonable person would accept 89,000 jobs in the national economy as "a significant number" on the record that was before the ALJ). Fatal to Kimberly's argument is the fact that the ALJ *omitted* accommodations for absenteeism in his RFC finding.

**B**

As for Kimberly's argument that there is a conflict of interest in this case because the "defendant" Kimberly Klein shares her first name, the argument is frivolous. First, Kimberly Klein is not the Defendant – that is Kilolo Kijakazi, Acting Commissioner of Social Security – but rather an Assistant United States Attorney representing the Acting Commissioner in this case. Second, a court's role in a Social Security disability case such as this is to review the Commissioner's final decision for substantial evidence in support of that decision. *See* 42 U.S.C. § 405(g) (providing that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . ."); 20 C.F.R. § 416.1400(a)(5) ("When you have completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section, we will have made our final decision. If you are dissatisfied with our final decision, you may request judicial review by filing an action in a Federal district court"). Shared first names

10

between a claimant and an AUSA defending the Commissioner's final decision, a decision that has been rendered *before* the claimant files a lawsuit seeking review of that decision, cannot reasonably suggest let alone actually present a conflict of interest.

As for Kimberly's single sentence argument that she feels the ALJ's behavior towards her was biased, the argument is entirely underdeveloped. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). Kimberly presents absolutely nothing – authority or otherwise – in support of her statement. The Court will not make Kimberly's argument for her, and, in any event, there is nothing in the record to suggest that ALJ was biased against her. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (stating a district court is not obliged to research and construct legal arguments for parties).

Finally, Kimberly argues the coronavirus (COVID-19) should have been taken into the consideration by the ALJ automatically and notes that she is immunocompromised and cannot work, which was not mentioned. She additionally believes the phone hearing held as a result of the COVID-19 pandemic resulted in the denial of her claim as she could not directly see the judge or explain her disability. The Court is persuaded by the Commissioner's proffered reasons for rejecting Kimberly's arguments in this regard and accordingly rejects them as a basis for further relief.

First, Kimberly did not allege as part of her SSI claim that she had immune system problems. Instead, as set forth in the ALJ's Decision, Kimberly claimed she was disabled as a result of depression, complained of gout, and complained of symptoms as a result of chronic kidney disease. Indeed, as also set forth the in the ALJ's Decision, Kimberly reported to the consultative psychological examiner that she stopped working as of October 2016 because of anxiety related to going to

work and "couldn't get up," and she had to stop the longest job she held because "anxiety, paranoid delusions, and depression symptoms." AR 407. Kimberly's chief complaint at the consultative internal medicine exam was that she was disabled due to renal failure stage 1, and she complained of leg swelling with prolonged standing, and gout flares once a week. AR 413. At the August 2020 hearing, Kimberly testified that her last work ended because she was "just having issues going to work . . . mentally it was hard." AR 70. She also testified that she started to feel sick as a result of her kidney problem. AR 76. At the second hearing in March 2021, Kimberly testified that when she went to work, her kidney function decreased, and her kidney problem caused her to require frequent bathroom breaks. AR 37. She also stated her legs swelled when she stood for long periods, she had joint and hip pain, and she had "some" depression. AR 38. The ALJ cannot be faulted for failing to consider something – a compromised immune system – that Kimberly did not identify as she pursued her SSI claim. *See Kaplarevic v. Saul,* 3 F.4th 940, 943 (7th Cir. 2021) ("It was [the claimant's] burden to show disability, and if he wanted to do so, he should have accepted the ALJ's invitation 'to identify the portions of the medical records that he believed supported various of [his] allegations'"). Second, the ALJ properly considered all of Kimberly's alleged physical and mental impairments in accordance with the applicable regulations. Third, Kimberly's mother did not mention that Kimberly had immune system problems. Fourth, by her own representations, Kimberly stopped working long before the COVID-19 pandemic – in 2016, allegedly due to her mental health issues.

As for her complaints about two telephonic hearings, Kimberly was well aware of the fact that the Social Security Administration (SSA) was proceeding with telephone hearings on her SSI claim as she was present and informed of that fact at each hearing. The ALJ stated point blank at the first hearing, "Now, due to

the extraordinary circumstances presented by the COVID-19 pandemic I am conducting this hearing by telephone." AR 58. At the second hearing, the ALJ made the same statement and asked Kimberly point blank, "And do you agree to having a telephone hearing today?" AR 32. Kimberly replied, "Yes." *Id*. At no time during either hearing did Kimberly question or complain about the fact her hearings were being held by telephone. Also, at each hearing, Kimberly was given the opportunity to tell the ALJ what her health issues were, the symptoms caused by those issues, the treatment she received for those issues, and all the ways in which all that prevented her from working. In contrast, Kimberly has not presented any evidence to this Court to substantiate her argument regarding the telephonic hearings. On this record, the Court will not fault SSA for conducting telephonic hearings so that it could continue to evaluate disability claims during the pandemic. *See, e.g., Fox v. Kijakazi*, No. 20-201, 2022 WL 273422, at *4 (E.D. Ky. Jan. 28, 2022) (rejecting claimant's argument that the ALJ's hearing via telephone was prejudicial to the claimant, in part, because "telephonic hearings have been held in courts across the country, in both state and federal systems, since the beginning of the COVID-19 pandemic"). This is so especially where the telephonic hearings reveal no obvious shortcomings and Kimberly has failed to establish prejudice arising from those hearings.

## IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 13) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Kimberly R.A., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on November 28, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE