UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| KIMBERLY R. A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-04153-SLD-JEH |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court are Plaintiff Kimberly R. A.'s affidavit, ECF No. 10, construed as a

motion for summary judgment[1]; Defendant Acting Commissioner of Social Security Kilolo

Kijakazi's ("the Commissioner") motion for summary affirmance, ECF No. 13; Magistrate Judge

Jonathan E. Hawley's report and recommendation ("R&R"), ECF No. 14, recommending that the

Court grant the Commissioner's motion and deny Kimberly's; and Kimberly's objection to the

R&R, ECF No. 15.  For the reasons that follow, the objection is OVERRULED, the R&R is

ADOPTED, the motion for summary judgment is DENIED, and the motion for summary

affirmance is GRANTED.

BACKGROUND[2]

I.       Procedural Background

On March 5, 2019, Kimberly filed an application for supplemental security income

("SSI"), alleging disability beginning January 1, 2018.  Her claim was denied initially and upon

reconsideration.  Kimberly then requested a hearing, which took place before an administrative

---

[1] Construing Kimberly's affidavit as a motion for summary judgment is consistent with the local rule in effect at that
time.  *See* Local Rule 8.1(E), ECF No. 8 ("Within 30 days after the filing of the responsive pleading and transcript,
the plaintiff must file a Motion for Summary Judgment and a Memorandum of Law which must state with
particularity which findings of the Commissioner are contrary to law.").
[2] The administrative record can be found at ECF No. 7.  Citations to the record take the form: R. _.

4:21-cv-04153-SLD-JEH   # 17   Page 2 of 9

law judge ("ALJ") on August 17, 2020.  The ALJ issued a decision denying Kimberly's claim

for benefits on September 29, 2020.  The Appeals Council subsequently remanded the case.  A

second hearing was held before the same ALJ on March 10, 2021, and the ALJ again denied her

claim for benefits on March 17, 2021.  The Appeals Council denied her request for review on

July 27, 2021; as such, the ALJ's March 17, 2021 decision is the final decision of the

Commissioner.  *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).  Proceeding *pro se*,

Kimberly timely filed this suit, seeking judicial review pursuant to 42 U.S.C. § 405(g),[3] Compl.

2, ECF No. 1.  Kimberly's motion for summary judgment was filed on January 24, 2022, and the

Commissioner filed a motion for summary affirmance on April 4, 2022.  The matter was referred

to Judge Hawley for recommended disposition, and he entered an R&R on November 28, 2022.

Kimberly filed an objection on December 7, 2022.

## II.    ALJ Decision

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R.

§ 416.920(a)(4), concluding that Kimberly was not disabled during the relevant period.  R. 12.

At step one, he found that Kimberly had not engaged in substantial gainful activity since March

5, 2019, the application date.  R. 14.  At step two, he found that Kimberly had the following

severe impairments: Depressive/Bipolar Related Disorders and Anxiety/Obsessive-Compulsive

Disorders.  R. 14.  At step three, the ALJ found that the severity of Kimberly's impairments,

considered singly and in combination, did not meet or medically equal the criteria of any

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 15.  Next, he found that

Kimberly had the residential functional capacity ("RFC") to perform a full range of work at all

---

[3] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security" on an application for SSI "shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

exertional levels but was limited to jobs that only required up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction, and she was further limited to jobs that did not require more than occasional work-related interaction with the public, co-workers and supervisors.  R. 16.  At step four, the ALJ found that Kimberly had no past relevant work.  R. 20.  At step five, he found that, considering Kimberly's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.  R. 20.  Accordingly, the ALJ found that Kimberly was not disabled.  R. 22.

**DISCUSSION**

### I.    Legal Standards

When a matter dispositive of a party's claim or defense is referred to a magistrate judge, the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed findings of fact."  Fed. R. Civ. P. 72(b)(1).  A party may file written objections to the R&R within fourteen days of its service.  *Id*. 72(b)(2).  The district judge will then "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  *Id*. 72(b)(3).  Any unobjected portions will be reviewed for clear error only.  *Johnson v. Zema Sys. Corp*., 170 F.3d 734, 739 (7th Cir. 1999).

In cases in which an ALJ has denied social security benefits to the plaintiff, the court "will uphold [the] ALJ's decision as long as the ALJ applied the correct legal standard, and substantial evidence supports the decision."  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (quotation marks omitted).  While the ALJ "is

3

not required to provide a complete and written evaluation of every piece of testimony and

evidence," he "must build a logical bridge from the evidence to his conclusion." *Minnick v.*

*Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted).  The court reviewing the

ALJ's decision will not "reweigh evidence, resolve conflicts, decide questions of credibility, or

substitute [its] own judgment for that of the Commissioner" but must nevertheless "conduct a

critical review of the evidence." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)

(quotation marks omitted).

## II.    Analysis

In her motion for summary judgment, Kimberly argues that the ALJ's conclusion that she

could perform certain jobs was not supported by the testimony of the vocational expert ("VE"),

who stated that she could not perform these jobs with her limitations.  Aff. 1.[4]  She also contends

that she feels there was a conflict of interest because "[t]he defendant is Kimberly Klein, [and

she] feel[s] having the same name could make this personal because of the same name"; that she

"feel[s] the [ALJ's] behavior towards [her] was biased"; that she "do[esn't] feel the cornoavirus

[sic] was taken into consideration and should have been automatically" because she is "immune

compromised and can't work and it wasn't even mentioned"; and that she "do[esn't] feel having

a phone hearing didn't prove [her] case thoroughly [sic], [because she] couldn't directly see the

[ALJ] or explain [her] disability." *Id*. at 1–2.

Judge Hawley rejects Kimberly's assumption that all of the hypotheticals posed to the VE

involved her actual limitations and points out that the hypothetical limitations the VE found

---

[4] Kimberly's motion for summary judgment references both the March 17, 2021 ALJ decision and the September 29, 2020 decision. *See* Aff. 1.  The Court addresses the March 17, 2021 decision here because it constitutes the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g) (providing that an individual may seek judicial review of the "*final decision* of the Commissioner" (emphasis added)); *see also Nelms*, 553 F.3d at 1097 ("If the Appeals Council denies a request for review, . . . the ALJ's decision becomes the final decision of the Commissioner . . . .").

would preclude all employment were not included in the RFC assigned to her by the ALJ.  *See*

R&R 4–6.  Finding that the RFC was supported by substantial evidence, *id*. at 6–9, Judge

Hawley concludes that the ALJ did not err in relying upon the VE's testimony that an individual

with the RFC assigned to Kimberly could perform work existing in significant numbers in the

national economy, *id*. at 9–10.  He further finds that Kimberly's conflict of interest argument is

frivolous; her argument about the ALJ's alleged bias is underdeveloped and therefore waived;

she never alleged issues with her immune system in her SSI claim and therefore cannot now fault

the ALJ for failing to consider such issues; and she expressly agreed to hold the hearing over the

phone.  *Id*. at 10–13.  Accordingly, he recommends that the Court deny Kimberly's motion for

summary judgment and grant the Commissioner's motion for summary affirmance.  *Id*. at 13.

Kimberly objects to Judge Hawley's finding as to the VE's testimony.  Obj. 1–2.[5]  The

Court will review this issue de novo.  Neither party objects to Judge Hawley's remaining

findings, and having reviewed the motions, record, and R&R, the Court finds that those portions

of the R&R are not clearly erroneous.

At the hearing, the ALJ asked the VE a series of hypotheticals.  He first asked him

to assume an individual who had the same age, education, and experience as Kimberly

who was

> limited to jobs that only require up to detailed but uninvolved tasks with few
> concrete variables, little in the way of change in job process from day to day, and
> jobs with multi-step self-evident tasks easily resumed after momentary distraction.

---

[5] In her objection, Kimberly further states, "The social security administration also lists automatic disabilities 1 being kidney disease and Depression [sic]."  Obj. 2.  It is not entirely clear what she means by this, but it is possible she wishes to claim error at step two, in which the ALJ determined which of her impairments were severe and medically determinable, *see* 20 C.F.R. § 416.920(a)(4)(ii), or at step three, in which the ALJ determined whether any of her impairments met or equaled a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, which would have meant that she was found to be disabled, *see* 20 C.F.R. § 416.920(a)(4)(iii).  However, she did not make either of these arguments in her motion for summary judgment and has therefore waived them.  *See Woodall v. Jo-Ann Stores, Inc.*, No. 1:14-cv-00263-SEB-DKL, 2015 WL 417660, at *2 (S.D. Ind. Jan. 30, 2015) ("Arguments not raised before the magistrate judge and raised for the first time in objections filed before the district judge are waived.").

And limited to jobs that do not require more than occasional work-related interaction with the public, coworkers, and supervisors.

R. 49.  He asked whether such an individual could perform jobs in the economy, and the VE

testified that that individual could work as a hand packager, with 110,000 jobs in the national

economy; a sweeper cleaner industrial, with 26,000 jobs; a housekeeping cleaner, with 425,000

jobs; a marker, with 226,000 jobs; a tube operator, with 4,600 jobs; and an addresser, with 4,000

jobs.  R. 49–50.  Next, the ALJ modified the hypothetical to limit the individual to jobs "that do

not require any work-related interaction with the public and no more than occasional work-

related interaction with coworkers and supervisors," and the VE testified that, of the jobs listed

above, only the job of housekeeping cleaner would be affected, and that position would still offer

100,000 jobs.  R. 51.  The ALJ then asked the VE about the employability of an individual who

would miss four or more days of work per month; the VE found that this would rule out all

employment.  R. 51.  Finally, the ALJ asked the VE to assume an individual who would be less

than 80 percent productive while on the job, such as someone who needed extra rest breaks or

extra restroom breaks.  R. 51.  The VE testified that this would also completely rule out

employment.  R. 51–52.

    Kimberly argues that this means that the VE ruled out that she could perform work due to

her limitations.  Obj. 1–2.  But this is a misinterpretation of the VE's testimony: the ALJ asked

the VE a series of hypotheticals, not all of which necessarily reflected the limitations the ALJ

actually determined Kimberly to have.  The ALJ found that Kimberly had the RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction[, and] [s]he is limited to jobs that do not require more than occasional work-related interaction with the public, co-workers, and supervisors.

6

R. 16 (emphasis omitted).  This reflects the first of the hypotheticals the ALJ posed to the VE, and the VE found such an individual could perform the jobs of hand packager, sweeper cleaner industrial, housekeeping cleaner, marker, tube operator, and addresser, with a cumulative 795,600 jobs in the national economy.  *See* R. 50.  It is true that later in the hearing, in response to being asked about an individual who would miss four or more days of work per month or who would be less than 80 percent productive while on the job, the VE testified that employment would be ruled out.  R. 51–52.  But the ALJ did not find that Kimberly had these restrictions.  Instead, the ALJ assigned Kimberly an RFC that, according to the VE, would permit her to perform a significant number of jobs in the national economy.

Moreover, the RFC the ALJ assigned to Kimberly is supported by substantial evidence.  *See Barnett*, 381 F.3d at 668.  A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1).  In assessing a claimant's RFC, an ALJ will look to "all the relevant evidence in [the] case record.  *Id*.  Here, the ALJ noted that Kimberly claimed that she was unable to work because, due to her mental and physical impairments, she has "difficulty with her memory and concentration," she has "difficulty with social interaction," she is "frequently depressed," she "does not consistently care for her own basic needs," and she has uncontrolled gout pain.  R. 17.  But the ALJ found that, while "her impairments could reasonably be expected to produce some of the symptoms alleged," the record lacked support for Kimberly's claims as to the frequency, intensity, and persistence of these symptoms.  R. 19.  During a mental status exam, Kimberly "had a normal mood and affect, and her behavior and judgment was normal."  R. 19.  She was able to recite her job history, her graduation date, her medications, her social security number, the names of current and past presidents, and details about the appointment, and her "recent and remote memories appeared adequate."  R. 19.  When asked to

7

perform a series of tasks, her "attention and concentration were adequate," and "she had little to no difficulty on any of the tasks." R. 19–20.

The ALJ also discussed Kimberly's alleged physical impairments of gout and diminished kidney function, noting that upon medical exam, she was found to have full range of motion, normal ability to grasp and manipulate objects, and 5/5 grip strength. R. 18. Her upper and lower extremity strength was 5/5 bilaterally, and her straight leg raise test was negative bilaterally. R. 18. At an appointment to discuss management of her chronic kidney disease, "she stated that she was not limited in any of her activities," although she reported urinary frequency, and she "had normal range of motion with no evidence of deformity." R. 18–19. The ALJ further addressed the opinions of state agency physicians, finding that their conclusions that Kimberly was not disabled were "reasonably consistent with the medical evidence and [Kimberly's] longitudinal treatment record," although the ALJ noted that "[t]hese limitations have been modified somewhat to afford [Kimberly] the benefit of the doubt." R. 20. The ALJ acknowledged that Kimberly's mother testified as to her limitations, but he found that this testimony was undermined both by her relationship to Kimberly and the fact that she "d[id] not appear to be . . . medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms." R. 20. Moreover, her testimony was "not fully consistent with the objective medical evidence as a whole." R. 20.

Through his examination of the record, the ALJ "articulate[d] [a] legitimate reason for his decision" and "buil[t] an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (finding it sufficient where the ALJ's "opinion enables [the court] to trace the

path of the ALJ's reasoning").  And Kimberly has not pointed to any lines of evidence that the

ALJ categorically ignored.  *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (stating that

an ALJ "may not ignore entire lines of contrary evidence").  As the ALJ did not err in his

creation of Kimberly's RFC, his conclusion that Kimberly could perform a significant number of

jobs in the national economy based on a hypothetical to the VE that matched the RFC was

proper.

## CONCLUSION

For the foregoing reasons, Plaintiff Kimberly R. A.'s objection, ECF No. 15, is

OVERRULED, and Magistrate Judge Jonathan E. Hawley's report and recommendation, ECF

No. 14, is ADOPTED.  Kimberly's affidavit, ECF No. 10, construed as a motion for summary

judgment, is DENIED, and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's

motion for summary affirmance, ECF No. 13, is GRANTED.  The Clerk is directed to enter

judgment and close the case.

Entered this 26th day of January, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE